IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| CAROLYN R. COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-6097-SSA-CV-SJ-WAK |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Claimant Carolyn R. Cook seeks judicial review,[1] pursuant to 42 U.S.C. § 405(g), of a final administrative decision denying disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. She claims she became disabled beginning on May 31, 1994, and the records indicate she was insured through June 30, 1997. Thus, to be entitled to benefits, she must prove she was disabled prior to June 30, 1997. The parties' briefs were fully submitted, and on April 3, 2007, an oral argument was held.

"Title II of the Social Security Act provides for the payment of insurance benefits to persons who suffer from a physical or mental disability, and Title XVI provides for the payment of disability benefits to indigent persons. The Act further provides that 'an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .' 42 U.S.C. § 423(d)(2)(A) (2003)." Lewis v. Barnhart, 353 F.3d 642, 645 (8th Cir. 2003).

In reviewing the administrative record, the court must sustain the Commissioner's decision if the findings are supported by substantial evidence on the record as a whole. 42

---

[1]With the consent of the parties, this case was assigned to the United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

U.S.C. § 405(g); Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).  The court may not, however, "rubber stamp" the Commissioner's decision, but must examine both the evidence that supports and detracts from the administrative determination.  Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987); Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1).  See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).  To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment."  McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983).

If the claimant establishes the impairment is sufficiently severe to prevent return to a former occupation, the burden shifts to the Commissioner to produce evidence the claimant can perform other substantial gainful employment.  Buck v. Bowen, 885 F.2d 451, 454 (8th Cir. 1989).  The Commissioner need not find a specific job opening for the claimant, but must demonstrate that substantial gainful activity is realistically within the capabilities of the claimant.  McMillian, 697 F.2d at 221.

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments.  McMillian, 697 F.2d at 221.

Carolyn Cook was born in 1941.  She graduated from high school and has two years of college, including a degree in nursing.  She is five feet five inches tall and weighs approximately 204 pounds.  She indicates she is disabled because of post-laminectomy syndrome, fibromyalgia, trocantor bursitis, degenerative disc disease and severe depression.  She filed her application for benefits in June 2003, but alleges disability beginning in May 1994.  Her last relevant work was as a layout worker for a yearbook publisher.  She never worked as a registered nurse.

Case 5:06-cv-06097-WAK   Document 16   Filed 05/10/07   Page 2 of 7

The Administrative Law Judge (ALJ) found that prior to June 30, 1997, Cook was moderately obese, had a history of left shoulder sprain with bursitis, and had possible fibromyalgia with fatigue. He decided claimant had the residual functional capacity to do light work, with some restrictions, and could perform her past relevant job as a layout worker.

In her request for judicial review, Cook asserts the ALJ (1) erred in not addressing or crediting the opinion of her treating physician, Dr. Davis; (2) erred in his evaluation of her subjective complaints and credibility; and (3) erred in finding she had the residual functional capacity to perform the tasks of a layout worker.

The medical records reveal that in the 1970's, Cook had three laminectomies. In the late 1980's, she was treated for pain in her shoulders and some back pain. In 1994, she was treated for left shoulder pain. Later that year, she was diagnosed with fatigue and fibromyalgia. She had tenderness on the right side of her lumbar spine. She had two appointments in 1995, which document fibromyalgia, fatigue, headaches, obesity, degenerative joint disease, bronchitis and a history of depression. She had two appointments in 1996, with one of them for symptoms of her fibromyalgia and fatigue. In 1997, she was seen for continued complaints of fibromyalgia and fatigue, and it was noted she had some decreased strength in her lower extremities. Further, she was experiencing additional back and leg pain. Objective testing suggested right L5-S1 radiculopathy and degenerative changes of the lumbar spine with sclerosis of the facet joints and calcification in the disk space. An MRI in July 1997 confirmed conditions that caused chronic back pain, post laminectomy.

Throughout this period, she was taking a variety of prescription medications. She reported she had good days and bad days, had trouble sleeping, felt fatigued through her entire body, had headaches and was restricted in her activities by her pain and fatigue. She relied upon her husband for most of the housework and cooking, but did whatever she could, depending on how she felt on that day.

In January 2004, Dr. Davis filled out a physical residual functional capacity questionnaire which was considerably more restrictive than the RFC found by the ALJ. Cook asserts that Dr. Davis' opinion, as a treating physician, should have been addressed by the ALJ and given substantially more and/or controlling weight.

The Commissioner acknowledges there were some errors in the ALJ's written decision, but asserts the ALJ adequately addressed the treatment notes. Further, the Commissioner points out that Dr. Davis completed his questionnaire without the benefit of reviewing Cook's medical records for the relevant time period and that he completed the questionnaire in 2004, more than six years after her last insured date.

The opinion of a treating physician is normally entitled to deference, but the ALJ is not required to defer to such an opinion when it is not internally consistent or it is not supported by acceptable clinical or diagnostic data. Anderson v. Barnhart, 344 F.3d 809, 813 (8th Cir. 2003) (quoting Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000)).

The problem with this case is that Cook did not file her application for benefits until nine years after her alleged onset date, and the majority of the medical records supporting her claim of disability were created after her last insured date. She worked and/or went to school after her back surgeries, and does not appear to have sought much medical care for her allegedly disabling conditions between May 1994 and June 1997. She regularly took prescription medications, including medication for pain, and her records reflect she was treated for fibromyalgia. If read liberally, her records may suggest she experienced an increase in her pain and fatigue during the relevant time, but the notes are not indicative of the degree of pain and fatigue. She does not appear to have been scheduled for frequent follow-up care for the fibromyalgia and fatigue. Instead, she had an annual examination and a few appointments for specific complaints. In 1995 and 1996, she only had two doctor appointments each year.

Thus, while the ALJ may have erred in not addressing Dr. Davis' opinion and setting forth his reasons for discounting it, the court cannot say the ALJ made reversible error. The date and answers to the questionnaire clearly cast some suspicion on its reliability, and the ALJ's reliance on the treatment notes instead of the questionnaire is not unreasonable, particularly when there appears to have been so little treatment for a substantial portion of the relevant time.

Cook also asserts the ALJ erred in his credibility determination. "Where adequately explained and supported, credibility findings are for the ALJ to make." Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Subjective complaints of physical and/or mental health problems may be discounted when they are inconsistent with medical reports, daily activities or other such evidence. Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003). Nevertheless, the ALJ's

4

decision to discredit such complaints must be supported by substantial evidence based upon the record as a whole. Dixon v. Barnhart, 353 F.3d at 605.

In making his credibility determinations, the ALJ referred to the medical records and Cook's reports of her daily activities. He found her statements to be only partially credible and set forth his reasons for doing so. The ALJ may have mischaracterized some of Cook's testimony regarding her daily activities, but when the record is reviewed as a whole, there is substantial evidence to support the ALJ's decision to discount her subjective complaints. The evidence is in the record, even if the ALJ failed to clearly articulate all of the reasons for his findings.

For example, Cook's earlier back surgeries had caused her some pain and functional limitations, but did not stop her from engaging in work activities and attending school for a substantial number of years. In early 1994, she completed her nursing degree.[2] Shortly thereafter, she was diagnosed with fatigue and fibromyalgia. She testified that a more generalized pain and fatigue started in 1994, but she waited until she finished school before seeking treatment. Her delay in seeking treatment suggests that she did not consider her condition to be disabling or that her pain was so severe as to render her incapable of completing her course work. Her medical records do not document a substantial increase in back pain.

Her records show that during a portion of the relevant time, she had shoulder pain based upon an injury, and that she had numerous doctor appointments for that condition. It appears that with treatment and time, the injury healed and/or the pain improved, and she does not rely upon it to support her disability claim. See Doc. 8 at 32.

---

[2]The court notes Cook completed course work to become a licensed practical nurse and then went back to school to obtain her license as a registered nurse. She asserts she never worked as a registered nurse because she was physically unable to do so and was concerned with her memory problems. Thus, the implication is that approximately 15 - 20 years after her back surgeries, she believed she was physically able to work as a nurse, and she continued to believe she could do so for at least a portion of the registered nurse program. Otherwise, she would not have enrolled in and completed the program.

It is not entirely clear that Cook ever worked as an LPN, but an LPN position was noted by the ALJ to be in the medium exertional level.

5

The issue is not whether plaintiff was experiencing pain during the coverage period, but how severe the pain was and whether it was disabling. Dolph v. Barnhart, 308 F.3d 876, 880 (8th Cir. 2002); Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. (2001); Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991). The same is true for her fatigue. While it is possible claimant's pain and fatigue may have been disabling, the record simply doesn't so strongly support disability as to make the credibility findings by the ALJ to be error. When claimant had substantial pain, as with her shoulder, she sought fairly frequent treatment, but she did not do so initially for her fibromyalgia and fatigue. Thus, there is enough substantial evidence on the record to support his decision.

Cook claims that if the ALJ erred in the weight given to Dr. Davis' opinion or in making his credibility decision, then his finding of her RFC was also in error.

The claimant, and not the Commissioner, has the burden of proving her residual functional capacity. Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). The ALJ's determination of residual functional capacity must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). It is a medical consideration that, in essence, defines "what he or she can do despite his or her limitations. 20 C.F.R. § 404.1545." Pearsall v. Massanari, 274 F.3d 1211, 1214 (8th Cir. 2001). In this case, there is substantial evidence on the record to support the ALJ's decision.

This case is somewhat troubling because Cook has evidence dated after her last insured date which indicates her condition may have been worsening. She sought considerably more medical treatment, and had objective testing which substantiated some of her subjective complaints. Her limited medical records for the relevant insured period and her long delay in requesting benefits, however, make it very difficult to determine the degree of her pain and functional limitations at that time. The court is not certain what decision it would have reached if deciding the issues in the first instance. The standard of review, however, requires the court to sustain the Commissioner's decision if it is supported by substantial evidence on the record as a whole.

The court finds there is substantial evidence on the record as a whole to support the Commissioner's decision. Accordingly, it is

ORDERED that the decision of the Commissioner is affirmed and this case is dismissed.

Dated this 10th day of May, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

7